**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

EFRAIN HILDALGO,       )
                           )
         **Plaintiff,**       )
                           )     **Civil Action No. 15-203ERIE**
        **v.**             )
                           )     **Magistrate Judge Susan Paradise Baxter**
PENNSYLVANIA DEPARTMENT   )
OF CORRECTIONS, *et al.*,      )
                           )
        **Defendants**     )

## MEMORANDUM OPINION

## I.    Background

### A.    Introduction

Plaintiff Efrain Hildalgo ("Hildalgo") is a prisoner at SCI Forest. (Docket No. 5 at p. 2).

Acting *pro se*, Plaintiff brought this action under 42 U.S.C. § 1983 against the following

defendants: the Pennsylvania Department of Corrections ("DoC"); Mr. Bailey, spiritual advisor

and master of ceremonies of Native American services at SCI Forest; Mr. McGowen, SCI

Forest's chaplain; Mr. Overmeyer, superintendent at SCI Forest; Ms. Haupt, unit manager at SCI

Forest; Ms. Dorina Varner, DoC's chief grievance coordinator; Mr. Klemm, DoC's head of

religious departments; and C.C.P.M. Ireland.[1] (Id. at pp. 2, 6). Hildalgo claims that Defendants

---

[1] Hildalgo did not acknowledge Ireland as a party under the party list on page two of his
complaint. (Id. at p. 2). However, Hildalgo handwrote "C.C.P.M. Ireland" into the caption on
the sixth page of his complaint and referred to "Defendant C.C.P.M." in paragraphs twenty one,
twenty two, and twenty three of his complaint. (Id. at p. 6; ¶¶ 21–23). Defendants did not refer
to Ireland or C.C.P.M. anywhere in their brief supporting their motion to dismiss. (Docket No.
30). Since the format of Hildalgo's *pro se* complaint may have led Defendants to believe that
Ireland was not a party in this case and that the facts as currently alleged preclude Hildalgo's

violated his rights under the First, Eighth, and Fourteenth Amendments, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Fort Stanwix and Fort Harmer treaties, and the Universal Declaration of Human Rights. (Id. at ¶¶ 17–18, 24–26). As relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.[2]

Defendants responded to Hildalgo's claims by filing a Rule 12(b)(6) motion to dismiss. (Docket No. 29). They argued that Hildalgo's lawsuit is barred by the Eleventh Amendment and that the individual defendants (except for Bailey) were not personally involved in the alleged violations of federal law Hildalgo alleged. (Docket No. 30 at pp. 3, 6). Since the filing of this case and the motion to dismiss, counsel has entered her appearance on behalf of Plaintiff. On January 6, 2017, Plaintiff, through counsel, filed a brief in opposition to the pending dispositive motion. (Docket # 61).

After considering the complaint (Docket No. 5), Defendants' brief in support of their motion to dismiss (Docket No. 30), and Hildalgo's opposition brief to the motion to dismiss

---

claims against Ireland due to lack of personal involvement in the alleged violations, this Court will include Ireland in its analysis.

[2] More specifically, Plaintiff seeks:

> A declaration that the acts and omissions described herein violated Plaintiff's right under the Constitution and law of the United States of America.
>
> A preliminary and permanent injunction ordering Defendants Overmeyer, Klemm, Varner, Bailey, Haupt, and McGowen to allow Plaintiff to participate in Native American services and not to compel the Plaintiff to violate the tenets of his belief in order to receive the benefits of Native American services. Furthermore, to compel the Defendants to allow the Plaintiff to participate in the Native American feast which is afforded to other similarly situated inmates. Furthermore ordering the Defendants to restore the Plaintiff all privileges that he has been denied as a result of asserting his religious rights.
> …

ECF No. 5, page 10.

(Docket No. 37), the Court will grant the motion to dismiss (Docket No. 29) in part and deny it in part.

### B.     Facts

The following well-pleaded facts, taken from Plaintiff's *pro se* complaint, will be taken as true in the motion-to-dismiss context.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

Hildalgo attended Native American services overseen by Bailey at SCI Forest.  (Docket No. 5 ¶ 1).  On September 30, 2014, Bailey announced that the services would be styled after Lakota practices and prisoners who disagreed "were told to leave."  (<u>Id.</u>).  Bailey instructed Hildalgo to smudge; Hildalgo refused because his nation, the Mohawks, do not smudge with sage.  (<u>Id.</u> at ¶¶ 2, 14).  Bailey responded that Hildalgo was not allowed to participate because he refused to smudge.  (<u>Id.</u> at ¶ 4).

Native American religious practices dictate that when many nations come together, "it is up to the individual to decide whether . . . he or she chooses to smudge with the herbs being used."  (<u>Id.</u> at ¶ 12).  For smudging, "the herbs used are different for all [n]ations."  (<u>Id.</u> at ¶ 11).  The Native Americans at SCI Forest are "told to follow a Lakota teaching" even though members of many other tribes are there.  (<u>Id.</u> at ¶ 13).  Hildalgo also averred that the DoC "receives financial assistance from the [f]ederal government to accommodate religious activities pursuant to" RLUIPA.  (<u>Id.</u> at ¶ 20).

Hildalgo returned to the prison chapel at 1:00PM on September 30, 2014.  (<u>Id.</u> at ¶ 5).  But before he could enter, Bailey stopped him and remarked that they needed to talk.  (<u>Id.</u>).  Bailey reiterated that he is the master of ceremonies and that Hildalgo "was to go into services and smudge" and asked him if he understood.  (<u>Id.</u> at ¶ 6).  Hildalgo again refused because his people do not smudge with sage.  (<u>Id.</u> at ¶ 7).  Bailey responded "I don't care[;] you will smudge

or you must leave." (<u>Id.</u>).  Immediately following this, Hildalgo asked to speak with McGowen, SCI Forest's chaplain.  (<u>Id.</u> at ¶ 8).  McGowen stated that "he supports whatever Mr. Bailey decides." (<u>Id.</u>).

About two weeks later, Hildalgo filed a grievance regarding Bailey's behavior after contacting Haupt and Overmeyer; C.C.P.M. Ireland denied the grievance.  (<u>Id.</u> at ¶ 21).  Hildalgo appealed to Overmeyer, who upheld Ireland's grievance denial.  (<u>Id.</u> at ¶ 22).  Following these setbacks, Hildalgo appealed to Chief Grievance Coordinator Varner and Klemm.  (<u>Id.</u> at p. 2; ¶ 23).  Varner and Klemm also upheld the grievance denial.  (<u>Id.</u> at ¶ 23).  The result of these events is that Hildalgo was "banned from participating in Native American [s]ervices and removed from the [p]rison [c]all out sheet." (<u>Id.</u> at ¶ 15).

## II.    <u>Standard of Review</u>

### A.    *Pro Se* **Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  <u>Boag v. MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel. Montgomery v. Brierley</u>, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with measure of tolerance").  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant.  <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir. 1997), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u>

Abdul-Akbar v. McKelvie, 239 F.3d 307, 310 (3d Cir. 2001); see, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing FED. R. CIV. P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because the complaint was filed by Plaintiff as a *pro se* litigant, this court may consider facts and make inferences when appropriate.

### B.    Rule 12(b)(1) Motion to Dismiss Standard[3]

A defendant's motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977)). In reviewing a facial attack, which addresses a deficiency in the pleadings, the court must only consider the allegations on the face of the complaint, taken as true, and any documents referenced in the complaint, viewed in the light most favorable to the plaintiff. Id.; Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 (3d Cir. 2002), overruled on other grounds by Animal Sci. Prods. v. China Minmetals Corp., 654 F.3d 462, 467–68 (3d Cir. 2011). "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citing Bell Atl. v. Twombly, 550 U.S. 544, 544 (2007)).

But when a 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, "we are not confined to the allegations in the complaint and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 754

---

[3] While Defendants moved for dismissal under Rule 12(b)(6), they argued that the Eleventh Amendment shielded them from Hildalgo's claims. (Docket No. 30 at p. 5). The Eleventh Amendment is a "jurisdictional bar." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Thus, the Court will construe the Eleventh Amendment part of Defendants' motion to dismiss under Rule 12(b)(1). Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693, n.2 (3d Cir. 1996).

(3d Cir. 2000). In reviewing a factual attack, "the [c]ourt is free to weigh the evidence and satisfy itself whether it has power to hear the case . . . [N]o presumptive truthfulness attaches to plaintiff's allegations." Carpet Grp. Int'l. v. Oriental Rug Importers Ass'n., 227 F.3d 62, 69 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891), overruled on other grounds by Animal Sci. Prods., 654 F.3d at 467–68. The party asserting subject matter jurisdiction bears the burden of proving that it exists. Id.; cf. Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007) ("On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").

### C. Rule 12(b)(6) Motion to Dismiss Standard

A motion to dismiss filed pursuant to Rule 12(b)(6) must be viewed in the light most favorable to the plaintiff and the complaint's well-pleaded allegations must be accepted as true. Erickson, 551 U.S. at 93–94. A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Emps'. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 146 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See also

McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")  A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 556 (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3d ed. 2004)).  Although the United States Supreme Court ("Supreme Court") does "not require heightened pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  Smith v. Sullivan, No. 07-528, 2008 WL 482469, at *1 (D. Del. Feb. 19, 2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556 n.3).

The Third Circuit has expounded on the Twombly/Iqbal line of cases.  To determine the sufficiency of a complaint under Twombly and Iqbal, the court must follow three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Second the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)).

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." Tracinda Corp. v. DaimlerChrysler AG, 197 F. Supp. 2d 42, 53 (D. Del. 2002) (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)). Indeed, the Supreme Court has held that a complaint is properly dismissed under Rule 12(b)(6) when it does not allege "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, or when the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The question is not whether the plaintiff will prevail in the end. Rather, the question "is whether the plaintiff is entitled to offer evidence in support of his or her claims." Swope v. City of Pittsburgh, 90 F. Supp. 3d 400, 405 (W.D. Pa. 2014) (citing Oatway v. Am. Int'l Grp., Inc., 325 F.3d 184, 187 (3d Cir. 2003)).

## III. Discussion[4]

### A. Eleventh Amendment Immunity

Defendants contend that the Eleventh Amendment bars Hildalgo's claims against them. The amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment's text does not prohibit federal courts from exercising jurisdiction over claims against a state by a same-state citizen, Supreme Court precedent dictates otherwise.

---

[4] Defendants' motion-to-dismiss arguments did not focus on whether Hildalgo's complaint alleged sufficient facts to satisfy the elements of the particular claims he made. Instead, Defendants scrutinized whether their presence as parties was plausible as a matter of law by evaluating the face of the complaint.

> Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).

The relief a plaintiff seeks when suing a state is irrelevant to the question of whether the Eleventh Amendment bars the suit. See Cory v. White, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought").

Suing a state official in their official capacity is generally not a detour around the Eleventh Amendment. A lawsuit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, suing a state official in his official capacity is effectively equivalent to suing the state itself.

### 1. DoC

Eleventh Amendment immunity prevents Hildalgo from suing the DoC as a matter of law. Third Circuit precedent mandates this result. "Because the Commonwealth of Pennsylvania's [DoC] is a part of the executive department of the Commonwealth, see [71] Pa. [CONS. STAT. ] . . . § 61, it shares in the Commonwealth's Eleventh Amendment immunity." Lavia v. Pennsylvania, 224 F.3d 190, 195 (3d Cir. 2000). Moreover, Pennsylvania does not consent to being sued in federal court. 42 PA. CONS. STAT. § 8521(b). Nor has Congress waived the states' immunity to § 1983 claims brought in federal court. Will, 491 U.S. at 66. Therefore, Hildalgo's claims against the DoC will be dismissed with prejudice.

### 2. Individually Named Defendants

9

The Eleventh Amendment does not foreclose Hildalgo's claims against the individual-corrections officials. "Eleventh Amendment immunity does not . . . bar suits against individual state officials for prospective injunctive and declaratory relief to end an ongoing violation of federal law." Kretchmar v. Beard, No. 05-6108, 2006 WL 2038687, *3 (E.D. Pa. July 18, 2006) (citing Ex parte Young, 209 U.S. 123, 160 (1908)).

Hildalgo's factual allegations show that jurisdiction is proper as to his claims against the individual-corrections officials. Hildalgo averred that Bailey prohibited him from participating in Native American services because Hildalgo refused to smudge with sage. (Docket No. 5 ¶¶ 2, 4). Hildalgo descends from the Mohawk nation, a tribe that does not smudge with sage. (Id. at ¶¶ 7, 14). Smudging with sage is a Lakota practice. (Id. at ¶¶ 1–2). The religious protocol applicable when multiple Native American nations gather, according to Hildalgo, is that "it is up to the individual to decide whether . . . he or she chooses to smudge with the herbs being used." (Id. at ¶ 12). However, at SCI Forest, "we are now being told to follow a Lakota teaching while many different [t]ribes exist in the circle." (Id. at ¶ 13). By asserting his First Amendment rights to practice his religion "according to the customs of [his] tribe[,] [he] was . . . banned from participating in Native American [s]ervices and removed from the [p]rison [c]all out sheet." (Id. at ¶ 15). This allegation indicates that his exclusion from Native American services is ongoing.

Hildalgo made two other allegations related to his First Amendment right to freely exercise his religious practices. First, prohibiting his participation in Native American services violates RLUIPA, 42 U.S.C. § 2000cc-1, because the DoC "receives financial assistance from the [f]ederal government to accommodate religious activities" and that not providing "[r]eligious accommodations . . . plac[es] a substantial burden on [his]" First Amendment rights. (Docket No. 5 ¶ 20). Second, corrections defendants retaliated against him for asserting his First

Amendment rights by denying him "privileges and services that are generally afforded to other inmates." (Id. at ¶ 26).

Considering the ongoing nature of the alleged federal-law violations at SCI Forest and Hildalgo's plea for declaratory and injunctive relief against the individual-corrections officials (Id. at ¶¶ 27–28), the Court holds that the Eleventh Amendment does not bar his claims for declaratory and injunctive relief against the individual defendants.

**B.    Personal Involvement of Individual Defendants**

Defendants requested that Hildalgo's claims against Overmeyer, McGowen, Haupt, Varner, and Klemm be dismissed because Hildalgo's allegations do not show sufficient personal involvement for liability under § 1983.[5]    (Docket No. 30 at 6).    "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.    Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.'"    Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

A prison official's negative evaluation of a prisoner's grievance alone is not enough for the official to be personally involved in the underlying federal-law violation under § 1983.    It is well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct.    See Brooks v. Beard, 167 Fed.App'x 923, 925 (3d Cir. 2006) (participation in the after-the-fact review of a grievance is not enough to establish personal involvement). See also Cole v. Sobina, 2007 WL 4460617 (W.D. Pa. Dec.19, 2007); Mearin v. Swartz, 951 F. Supp. 2d 776, 782 (W.D.

---

[5] The court will also determine if C.C.P.M. Ireland was personally involved in allegedly violating Hildalgo's federal-based rights. *See supra* fn.1.

Pa. 2013) (citing Rode, 845 F.2d at 1207); Ramos v. Pennsylvania Dep't of Corr., 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) ("review and denial of the grievances and subsequent administrative appeal conducted does not establish personal involvement by those [d]efendants in the alleged underlying unconstitutional conduct"); Watkins v. Horn, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997) (establishing personal involvement requires more than concurring in an administrative appeal).

As pled by Plaintiff acting on his own behalf, Bailey and McGowen are the only two individual defendants who were personally involved in violating his federal-based rights. Allegedly Bailey prohibited Hildalgo from attending Native American religious ceremonies unless Hildalgo smudged with sage. (Docket No. 5 ¶¶ 1–7). Furthermore, Plaintiff alleges that when he told McGowan about Bailey's actions on the day they occurred, McGowen supported "whatever Mr. Bailey decides." (Id. at ¶ 8). This shows that McGowen allegedly knew about and acquiesced in Bailey's acts. Evancho, 423 F.3d at 353. Hildalgo's claims against Bailey and McGowen will advance to discovery.

Plaintiff has not sufficiently alleged that the remaining individual Defendants personally violated Hildalgo's federal-based rights because their alleged involvement extended no further than evaluating his prison grievance. Ireland, Overmeyer, Klemm, and Varner are not personally involved because they denied Hildalgo's prison grievance or grievance appeal. (Id. at ¶¶ 21–23). Haupt is not personally involved because Hildalgo merely contacted him two weeks after the violation underlying this lawsuit. (Id. at ¶ 21). Hildalgo does not specifically allege that Haupt participated in the prison-grievance process but also failed to make any specific allegations personally linking Haupt to the alleged violations of Hildalgo's federal-based rights. (Id.).

Although Plaintiff, acting *pro se*, has failed to sufficiently allege the personal involvement of these Defendants, now that he is represented by counsel, he will be permitted the opportunity to amend the complaint to cure this deficiency. <u>See</u> Fed.R.Civ.P. 15(a)(2) ("the court should freely give leave [to amend] when justice so requires.").

## IV.    <u>Conclusion</u>

The Eleventh Amendment bars Hildalgo's claims against the DoC, which will be dismissed with prejudice.   Due to lack of personal involvement in the alleged federal-law violations underlying this case, the Court will dismiss without prejudice Hildalgo's claims against Ireland, Overmeyer, Klemm, Varner, and Haupt.   Hildalgo's complaint alleges sufficient personal involvement in the underlying federal-law violations such that the claims against Bailey and McGowen will remain in the lawsuit.   Therefore, the Defendants' motion to dismiss (Docket No. 29) will be granted in part and denied in part.

An appropriate Order will follow.

<u>s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: January 10, 2017